```
                   UNITED STATES DISTRICT COURT
                   EASTERN DISTRICT OF LOUISIANA
```

**DARREN PARRISH**                                    CIVIL ACTION

**versus**                                            No. 07-2789
                                                      c/w:08-474
                                                      ref:08-474

**SUPERIOR ENERGY SERVICES, L.L.C.,** *et al.*        SECTION: I/5

## ORDER AND REASONS

Before the Court is a motion for summary judgment filed on behalf of Acadian Integrated Solutions, L.L.C., ("AIS")[1] and a cross-motion for summary judgment filed on behalf of Darren Parrish ("Parrish").[2] Considering the fact that both motions concern the prescriptive period applicable to Parrish's medical malpractice claim against AIS, the Court shall submit the motions together. For the following reasons, AIS's motion is **GRANTED** and Parrish's cross-motion is **DENIED**.

## BACKGROUND

On April 19, 2006, Parrish, an employee of Dynamic Industries ("Dynamic"), was dispatched to an offshore production platform owned and operated by either SPN Resources, L.L.C., ("SPN") or Superior Energy Services, Inc./Superior Energy Services, L.L.C., (collectively "Superior").[3] The offshore platform was located at

---

[1] Rec. Doc. No. 40.

[2] Rec. Doc. No. 47.

[3] Parrish alleges that either Superior or SPN owned and operated the offshore production platform.  Rec. Doc. No. 1-2, p. 2, para. VI.

South Pass, Block 60, off the coast of Louisiana.[4]

Approximately two to three days[5] after arriving at SPN's platform, Parrish developed an abscessed tooth.[6] Parrish notified SPN personnel of his condition and requested that he be allowed to return to shore in order to receive treatment.[7] SPN's foreman advised Parrish that, in light of the fact that Parrish was the only scaffolding supervisor on the platform at that time, he could not leave until Dynamic dispatched a replacement.[8] Parrish remained on the platform, and on each of the following six days, platform medic and AIS[9] employee, Cliff Pennington ("Pennington"), provided Parrish with fifteen to twenty 500mg Tylenol, a.k.a., acetaminophen, tablets to help Parrish cope with the pain.[10]

On April 29, 2006, Parrish was found in his bunk room suffering from severe abdominal pain, nausea, vomiting, and

---

[4]*Id.*

[5]Parrish alleges in his complaint that he began experiencing pain approximately three days after arriving at SPN's platform. Rec. Doc. No. 1-2, p. 2, para. V. However, Parrish states in his memorandum in support of his motion that he began experiencing pain two days after arriving at SPN's platform. Rec. Doc. No. 47-3, p. 2.

[6]Rec. Doc. No. 47-3, p. 2.

[7]Parrish allegedly told SPN personnel that he would return to the platform after receiving treatment. *Id.*

[8]In light of the fact that Parrish was the only scaffolding supervisor on the platform, SPN's foreman would have been required to shut down the scaffolding operations on the platform until Dynamic dispatched a replacement. *Id.*

[9]AIS is a Limited Liability Company licensed to do and doing business in Louisiana. Rec. Doc. No. 8, p. 1, para. IVA. AIS provides on-site medical services and safety personnel to the offshore industry.

[10]Rec. Doc. No. 47-3, p. 2.

diarrhea.[11]  Parrish was evacuated to Ochsner Hospital where he was diagnosed with Tylenol poisoning.[12]  Doctors determined that the excessive amount of Tylenol administered to Parrish caused irreversible liver damage necessitating a total liver transplant which was performed on May 3, 2008.[13]

On February 28, 2007, Parrish filed a worker's compensation claim against Dynamic alleging that he is entitled to "weekly indemnity benefits, reimbursement of all medical expenses, and payment of ongoing medical care related to his liver transplant."[14] On April 13, 2007, Parrish filed a lawsuit against Superior, SPN, and Pennington in the 24th Judicial District Court for the Parish of Jefferson, State of Louisiana.[15]

On May 4, 2007, Parrish's lawsuit was removed to this Court.[16] On May 11, 2007, Parrish amended his complaint to add AIS as a defendant and to clarify his allegations against Pennington.[17]  In

---

[11]*Id.*

[12]*Id.*

[13]*Id.* at pp. 2-3.

[14]The Court notes that Parrish alleges that he filed his worker's compensation claim on March 2, 2007. *Id.* at p. 3.  However, Parrish's Form LS-203 states that the date of Parrish's worker's compensation claim is February 28, 2007.  *See* Rec. Doc. No. 47-4.

[15]At the time Parrish filed his lawsuit in state court, he did not know Pennington's last name and, therefore, he referred to Pennington as "Cliff (last name unknown)." Rec. Doc. No. 1-2.

[16]Parrish's lawsuit was removed pursuant to The Outer Continental Shelf Lands Act, 43 U.S.C. § 1331.  Rec. Doc. No. 1.

[17]Rec. Doc. No. 8.

his amended complaint, Parrish alleges that his damages were caused "concurrently by the negligence of employees of Superior Energy Services/SPN Resources and the platform medic, Cliff Pennington, for which Superior Energy Services, Inc., Superior Energy Services, L.L.C., SPN Resources, L.L.C., and Acadian Integrated Solutions, L.L.C., are vicariously liable."[18]

It is undisputed that Pennington and AIS are "health care providers" within the meaning of the Louisiana Medical Malpractice Act (the "LMMA"), and that Parrish's claims against those defendants are for medical "malpractice."[19]  On July 31, 2007, as

---

[18]Rec. Doc. No. 8, p. 3, para. VII.  Parrish alleges that AIS and its co-defendants are vicariously liable for Pennington's alleged negligent conduct which includes:

> (1) Failure to advise Parrish of the risks and complications associated with high doses of acetaminophen, a.k.a., Tylenol;
> (2) Dispensing Parrish a dangerously excessive quantity of Tylenol; and
> (3) Failure to recommend that, or arrange for, Parrish be transported ashore for proper medical treatment.

*Id*.

Parrish has also claimed that AIS and its co-defendants are solidarily and/or jointly obligated for the harm that Parrish suffered. Rec. Doc. No. 36, p. 2, para. VI, Answer to Complaint for Declaratory Judgment.

[19]The LMMA defines "health care provider" as:

> [A] person, partnership, limited liability partnership, limited liability company, corporation, facility, or institution licensed or certified by this state to provide health care or professional services as a physician, hospital, nursing home, community blood center, tissue bank, dentist, registered or licensed practical nurse or certified nurse assistant, offshore health service provider, ambulance service under circumstances in which the provisions of R.S. 40:1299.39 are not applicable, certified registered nurse anesthetist, nurse midwife, licensed midwife, pharmacist, optometrist, podiatrist, chiropractor, physical therapist, occupational therapist, psychologist, social worker, licensed professional counselor, licensed perfusionist, or any nonprofit facility considered tax exempt under Section 501(c)(3), Internal Revenue Code, pursuant to 26 U.S.C. 501(c)(3), for the diagnosis and treatment of cancer or cancer-related diseases, whether or not such a facility is required to be licensed by this state, or any professional corporation a health care provider is

a result of Parrish's failure to convene a medical review panel prior to filing his lawsuit,[20] the Court dismissed Parrish's claim against AIS without prejudice as premature.[21] On the same date, Parrish requested that a medical review panel be convened.[22]

On January 15, 2008, AIS filed a complaint for declaratory judgment[23] alleging that, as a result of Parrish's failure to request that a medical review panel be convened within one year of the event giving rise to his malpractice claim, i.e., Pennington's alleged negligence, Parrish's malpractice claim against AIS has

---

> authorized to form under the provisions of Title 12 of the Louisiana Revised Statutes of 1950, or any partnership, limited liability partnership, limited liability company, management company, or corporation whose business is conducted principally by health care providers, or an officer, employee, partner, member, shareholder, or agent thereof acting in the course and scope of his employment.

La. Rev. Stat. Ann. § 40:1299.41(A)(1).

> The LMMA defines "malpractice" as:
>
> [A]ny unintentional tort or any breach of contract based on health care or professional services rendered, or which should have been rendered, by a health care provider, to a patient, including failure to render services timely and the handling of a patient, including loading and unloading of a patient, and also includes all legal responsibility of a health care provider arising from acts or omission during the procurement of blood or blood components, in the training or supervision of health care providers, or from defects in blood, tissue, transplants, drugs, and medicines, or from defect in or failures of prosthetic devices implanted in or used on or in the person of a patient.

La. Rev. Stat. Ann. § 40:1299.41(A)(8).

[20]*See* La. Rev. Stat. Ann. § 40:1299.47.

[21]Rec. Doc. No. 25. The Court notes that on September 12, 2007, Parrish's malpractice claim against Pennington was also dismissed, without prejudice, pursuant to the Court's call docket. Rec. Doc. No. 27.

[22]Rec. Doc. No. 47-3, p. 3.

[23]*See* Civil Action No. 08-474 c/w 07-2789, Rec. Doc. No. 1.

prescribed.[24]  AIS and Parrish filed these motions for summary judgment requesting that the Court determine whether Parrish's malpractice claim against AIS has prescribed.[25]

## LAW AND ANALYSIS

### I. RULE 56 STANDARD

A party seeking a declaratory judgment is entitled to summary judgment when, after reviewing the "pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any," the court determines that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law.  Fed. R. Civ. P.(c).  The party seeking summary judgment always bears the initial responsibility of informing the court of the basis for its motion and identifying those portions of the record that it believes demonstrate the absence of a genuine issue of material fact.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S. Ct. 2548, 2553, 91 L. Ed. 2d 266 (1986).  The party seeking summary judgment need not produce evidence negating the existence of material fact, but need only point out the absence of evidence supporting the other party's

---

[24]*Id*. at p. 4, paras. XIII-XIV.

[25]AIS filed its motion for summary judgment on March 4, 2008. Rec. Doc. No. 40.  Parrish filed his cross-motion for summary judgment on March 24, 2008. Rec. Doc. No. 47.
    The Court notes that Parrish's original lawsuit, Civil Action No. 07-2789, was dismissed in its entirety, without prejudice, on April 24, 2008. Rec. Doc. No. 58.

case. *Id.*; *Fontenot v. Upjohn Co.*, 780 F.2d 1190, 1195 (5th Cir. 1986) (internal quotation omitted).

Once the party seeking the summary judgment carries its burden pursuant to Rule 56 (c), the other party must come forward with specific facts showing that there is a genuine issue of material fact for trial. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S. Ct. 1348, 1356, 89 L. Ed. 2d 538 (1986). The showing of a genuine issue is not satisfied by creating some metaphysical doubt as to the material facts by conclusory allegations, unsubstantiated assertions, or by only a scintilla of evidence. *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994) (internal citations omitted). Instead, a genuine issue of material fact exists when the "evidence is such that a reasonable jury could return a verdict for the non-moving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S. Ct. 2505, 2510, 91 L. Ed. 2d 202 (1986). The party responding to the motion for summary judgment may not rest upon the pleadings, but must identify specific facts that establish a genuine issue. *Id.* The non-moving party's evidence, however, "is to be believed, and all justifiable inferences are to be drawn in [that party's] favor." *Hunt v. Cromartie*, 526 U.S. 541, 552, 119 S. Ct. 1545, 1551-52, 143 L. Ed. 2d 731 (1999) (internal quotation and citation omitted).

**II. PRESCRIPTION**

    **A. GENERALLY**

Pursuant to Louisiana law,[26] "[p]rescription runs against all persons unless an exception is established by legislation." *Lebreton v. Rabito*, 714 So. 2d 1226, 1228 (La. 1998) (citing La. Civ. Code art. 3467).[27] Generally, the party pleading prescription bears the burden of proving that a lawsuit has prescribed. *Wilkes v. Carroll*, 704 So. 2d 938, 939 (La. App. 2 Cir. 1997). However, "[i]n those instances . . . when the plaintiff's petition shows on its face that the prescriptive period has expired, the burden shifts to the plaintiff to demonstrate suspension[28] or interruption[29] of the prescriptive period." *Coleman v. Acromed Corp.*, 764 So. 2d 81, 83 (La. App. 1 Cir. 1999) (citing *Lima v. Schmidt*, 595 So. 2d

---

[26] The parties agree that the Court has jurisdiction pursuant to 43 U.S.C. § 1331, the Outer Continental Shelf Lands Act ("OCSLA"). Rec. Doc. No. 47-3, pp. 3-4; Rec. Doc. No. 40-3, p. 1. Considering the location of SPN's production platform, it is undisputed that, pursuant to OCSLA, Louisiana substantive law defines the parties' rights and obligations. Rec. Doc. No. 47-3, pp. 3-4; Rec. Doc. No. 40-3, p. 1.

[27] La. Civ. Code art. 3467 provides, "[p]rescription runs against all persons unless an exception is established by legislation."

[28] "Suspension of prescription constitutes a temporary halt to its running . . .; [it is] a period of time in which prescription slumbers." *Lebreton v. Rabito*, 714 So. 2d 1226, 1229 (La. 1998). "Prescription is suspended for as long as the cause of suspension continues." *Id*. "After the cause for the suspension ends, the prescriptive time begins running and the 'time which precede[d] the suspension is added to the time which follows it to compose the necessary period; only the period of suspension is deducted.'" *Id*. (quoting G. Baudier-Lacantinerie & A. Tissier, **TRAITE THEORIQUE ET PRATIQUE DE DROIT CIVIL**, No 25 (4th ed. 1924), *reprinted* in **5 CIVIL LAW TRANSLATIONS** at 221-22 (La. St. Law Inst. Trans. 1972)). "At the root of the principle of suspension is the recognition that a creditor should not lose his legal claim during a period when enforcement of the claim is prevented." *Id*.

[29] Interruption "not only stops the running of prescription, it 'annuls the commenced prescription so that after the interruption ceases, a new prescription must commence.'" *Id*. (quoting G. Baudier-Lacantinerie & A. Tissier, No. 415 at 221); *see also* La. Civ. Code art. 3466. "[U]nlike suspension which requires no act by the creditor, interruption results from an act by a creditor or a debtor's renunciation." *Lebreton*, 714 So. 2d at 1229.

624 (La. 1992)); *see also Lebreton*, 714 So. 2d at 1229 (citing *Wimberly v. Gatch* , 635 So. 2d 206 (La. 1994)).

## B. THE LMMA

The LMMA provides that malpractice claims against health care providers must be filed within one year of an alleged negligent act or omission or within one year of discovery of an alleged negligent act or omission. La. Rev. Stat. Ann. § 9:5628(A).[30] However, in all circumstances, malpractice claims must be filed, at the latest, within three years after an alleged negligent act or omission. *Id*.

The LMMA also provides, "[n]o action against a health care provider covered by this Part, or his insurer, may be commenced in any court before the claimant's proposed complaint has been presented to a medical review panel established pursuant to this Section." La. Rev. Stat. Ann. § 40:1299.47(B)(1)(a)(i). "The filing of a request for a medical review panel shall suspend the time within which suit must be filed until ninety days after the claim has been dismissed in accordance with this Section." La.

---

[30]La. Rev. Stat. Ann. § 9:5628(A) provides:
No action for damages for injury or death against any physician, chiropractor, nurse, licensed midwife practitioner, dentist, psychologist, optometrist, hospital or nursing home duly licensed under the laws of [Louisiana], or community blood center or tissue bank as defined in R.S. 40:1299.41(A), whether based upon tort, or breach of contract, or otherwise, arising out of patient care shall be brought unless filed within one year from the date of the alleged act, omission, or neglect, or within one year from the date of discovery of the alleged act, omission, or neglect; however, even as to claims filed within one year from the date of such discovery, in all events such claims shall be filed at the latest within a period of three years from the date of the alleged act, omission, or neglect.

Rev. Stat. Ann. § 40:1299.47(A)(2)(c).

In the event that a malpractice claimant convenes a medical review panel, the health care provider against whom the claim is asserted "may raise any exception or defense available pursuant to R.S. 9:5628 in a court of competent jurisdiction and proper venue at any time without need for completion of the review process by the medical review panel."  La. Rev. Stat. Ann. § 40:1299.47(B)(2)(a).[31]  "If the court finds that the claim had prescribed or otherwise was preempted prior to being filed, the panel, if established, shall be dissolved."  La. Rev. Stat. Ann. § 40:1299.47(B)(2)(b).

### III. **DISCUSSION**

The parties agree that the alleged negligent act at issue in this case occurred during the week of April 22-29, 2006.[32]  In light of the fact that Parrish did not request that a medical review panel be convened until more than one year after the alleged negligent act, i.e., July 31, 2007, AIS argues that, pursuant to La. Rev. Stat. Ann. § 9:5628(A), Parrish's malpractice claim

---

[31]La. Rev. Stat. Ann. § 40:1299.47(B)(2)(a) provides:
A health care provider, against whom a claim has been filed under the provisions of this Part, may raise any exception or defenses available pursuant to R.S. 9:5628 in a court of competent jurisdiction and proper venue at any time without need for completion of the review process by the medical review panel.

[32]Rec. Doc. No. 40-3, p. 5; Rec. Doc. No. 47-3, p. 4.

against AIS has prescribed on its face.[33]

While Parrish concedes that he did not timely convene a medical review panel as required by the LMMA,[34] he argues that, pursuant to Louisiana Civil Code Article 2324 ("article 2324"), his malpractice claim against AIS has not prescribed.[35]  Article 2324 provides, in pertinent part, that "[i]nterruption of prescription against one joint tortfeasor is effective against all joint tortfeasors."[36]  La. Civ. Code art. 2324(C).  Parrish argues that, in light of the fact that he timely filed a worker's compensation claim against Dynamic and a lawsuit against AIS's alleged joint tortfeasors,[37] SPN and Superior, Parrish interrupted the prescriptive period applicable to his malpractice claim against

---

[33]*Id*.  AIS alternatively argues that, in light of the fact that Parrish's amended complaint against AIS was dismissed without prejudice as premature, Parrish did not file his lawsuit against AIS in a court of competent jurisdiction and, therefore, he cannot assert that said lawsuit interrupted prescription.  *Id*. at p. 6.  AIS's alternative argument is without merit.  Simply because a medical malpractice lawsuit is dismissed as premature does not mean that the court in which the lawsuit was filed lacked subject matter jurisdiction.  *See, e.g., Vincent v. Romagosa*, 390 So. 2d 270, 271 (La. App. 3 Cir. 1980).

AIS additionally argues that Parrish cannot argue that prescription was interrupted because the state court in which Parrish originally filed his lawsuit lacked jurisdiction over his OCSLA claims.  Rec. Doc. No. 51, p. 4.  However, there is "nothing in the language, structure, legislative history, or underlying policies of OCSLA [suggesting] that Congress intended federal courts to exercise exclusive federal jurisdiction over personal injury actions arising under OCSLA." *Gulf Offshore Co. v. Mobil Oil Corp*., 453 U.S. 473, 484, 101 S. Ct. 2870, 2878, 69 L. Ed. 2d 784 (1981); *see generally Chair King, Inc. v. Houston Cellular Corp*., 131 F. 3d 507, 513-14 (5th Cir. 1997) (explaining that in *Gulf Offshore*, the presumption of a state court's concurrent jurisdiction had not been rebutted with respect to OCSLA).

[34]Rec. Doc. No. 47-3, p. 5.

[35]*Id*. at pp. 12, 15.

[36]*Id*. at p. 12.

[37]Rec. Doc. No. 1-2.

AIS.[38]

Parrish asserts that the arguments presented by the parties raise a legal issue which has yet to be squarely resolved by the Louisiana Supreme Court,[39] i.e., whether a plaintiff can interrupt prescription against a health care provider accused of malpractice by filing a timely lawsuit[40] against the provider's alleged joint tortfeasors or solidary obligors.[41]  *See Schulingkamp v. Ochsner Clinic*, 838 So. 2d 1289 (La. 2003).[42]

---

[38]Rec. Doc. No. 47-3, p. 15.

[39]*Id*. at p. 5.

[40]The Court uses the term "premature lawsuit" to describe a medical malpractice lawsuit that has been filed before a medical review panel has been convened.

[41]The Court notes that in *Billiot v. American Hospital Supply Corp*.,721 F.2d 512 (5th Cir. 1983), plaintiff sued the manufacturers of prostheses and the physician who implanted said prostheses.  The U.S. Fifth Circuit, relying on *Chalstrom v. Deselles*, 433 So. 2d 866 (La. App. 4 Cir. 1983), held that article 2324 permitted the "plaintiff [to keep] alive his rights against a physician by timely filing suit against the physician's alleged solidary obligor even though at that time more than three years had elapsed from the time of the physician's alleged act, omission, or neglect." *Billiot*, 721 F.2d at 514 (internal quotations omitted).
  The U.S. Fifth Circuit's decision notwithstanding, the case which the Fifth Circuit relied upon, *Chalstrom*, is factually distinguishable from this case because, unlike the present matter, all of the defendants in *Chalstrom* were health care providers.  Since the Fifth Circuit's holding in *Billiot*, the Louisiana Fourth Circuit has held that prescription cannot be interrupted against a health care provider by the filing of a timely lawsuit filed solely against the provider's solidary obligors not covered by the LMMA. *See Mitchell infra*. Further, the Louisiana Supreme Court, in *Lebreton v. Rabito*, 714 So. 2d 1226, 1228 (La. 1998), rendered an opinion which calls into question the applicability of article 2324 in medical malpractice lawsuits.

[42]In *Schulingkamp*, the Louisiana Supreme Court anticipated addressing the issue of "whether a medical malpractice plaintiff may file a request for a medical review panel at any time during the pendency of a suit against tort defendants who were alleged to be solidarily liable with medical malpractice defendants against whom the request is filed." *Schulingkamp v. Ochsner Clinic*, 838 So. 2d 1289 (La. 2003).  However, in light of the fact that plaintiff failed to expressly allege solidary liability between defendants, the Court was precluded from finding solidarity and it left the above-referenced issue unresolved.  *Id*. at pp. 1289-90.

There is currently a difference of opinion within Louisiana's intermediate appellate courts concerning whether a timely lawsuit filed solely against a health care provider's alleged joint tortfeasors, who are not health care providers, will interrupt prescription as to the health care provider. In *Coleman v. Acromed Corp.*, the Louisiana First Circuit Court of Appeal held that, pursuant to the Louisiana Civil Code,[43] the filing of a timely lawsuit against a health care provider's co-defendants, who were not health care providers and who were alleged to be solidary obligors, interrupted prescription against the health care provider. 764 So. 2d 81, 84 (La. App. 1 Cir. 1999); *see also Jarrell v. West Jefferson Med. Cent.*, 956 So. 2d 5 (La. App. 5 Cir. 2007).

In contrast, the Louisiana Fourth Circuit in *Mitchell v. Rehab. Inst. of New Orleans, Inc.*, held that:

> [E]ven if a medical malpractice plaintiff initially filed a timely suit in a court of competent jurisdiction against a defendant not qualified under the medical malpractice act, alleging solidary liability between that defendant and a defendant healthcare provider covered by the act, the specific statutory provision providing for the suspension of prescription found in the medical malpractice act **is to be applied alone** and not with the more general Civil Code article which addresses the interruption of prescription.

*Mitchell v. Rehab. Inst. of New Orleans, Inc.,* 953 So. 2d 75, 80

---

[43] The Court in *Coleman* cited to Louisiana Civil Code Article 1799 which, similar to article 2324, provides that "[t]he interruption of prescription against one solidary obligor is effective against all solidary obligors and their heirs." La. Civ. Code art. 1799.

(La. App. 4 Cir. 2007) (emphasis added);[44] *see also, e.g., Yen v. Avoyelles Parish Police Jury*, 971 So. 2d 536, 539-40 (La. App. 3 Cir. 2007) (citing *Borel v. Young*, 947 So. 2d 824 (La. App. 3 Cir. 2006); *Mitchell*, 953 So. 2d at 80).

While the Louisiana Supreme Court has not directly addressed the specific issue raised by the parties, its application of Louisiana's rules of statutory construction in similar cases compels this Court to conclude that a plaintiff cannot interrupt prescription against a health care provider accused of malpractice by filing a premature lawsuit against the provider's alleged joint tortfeasors.

Louisiana's "[r]ules of statutory construction provide that where two statutes deal with the same subject matter, they should be harmonized if possible; however, if there is a conflict, the statute specifically directed to the matter at issue must prevail as an exception to the statute more general in character." *Lebreton*, 714 So. 2d at 1229 (citing *Bickman v. Dees*, 367 So. 2d

---

[44]In *Mitchell*, plaintiffs filed their original petition in Civil District Court for the Parish of Orleans, naming a defendant that was not covered by the LMMA.  *Mitchell*, 953 So. 2d at 76.  Plaintiffs later amended their original petition to name a physician who was covered by the LMMA and alleged that the physician was solidarily liable with the original defendant.  *Id*.  Plaintiffs amended their petition a second time in order to name the State of Louisiana, through the Board of Supervisors of Louisiana State University (LSU) Agricultural and Mechanical College and LSU Medical Center, as a defendant.  *Id*. at p. 77.
    The Louisiana Fourth Circuit held that plaintiffs' malpractice claims against the physician and the state had prescribed "because their request for a state medical review panel was filed . . . more than a year from the date of the alleged malpractice and [the decedent's] death."  *Id*. at p. 79.  The Court stated that "[t]he fact that the plaintiffs in [that] case first filed a suit against a defendant not covered by the medical malpractice act alleging solidary liability between that defendant and the defendants covered under the medical malpractice act . . . [was] of no consequence . . . ."  *Id*.

283 (La. 1978); *Esteve v. Allstate Ins. Co.*, 351 So. 2d 117 (La. 1977)).

In *Lebreton v. Rabito*, the Louisiana Supreme Court reviewed the lower court's holding that, pursuant to general codal articles, i.e., La. Civ. Code arts. 3462, 3466, and 3472, a premature lawsuit only naming health care providers as defendants was sufficient to interrupt prescription. *Lebreton*, 714 So. 2d at 1229. Applying general rules of statutory construction, the Louisiana Supreme Court determined that there was a conflict between the LMMA and general codal articles governing prescription and, as such, the LMMA's prescriptive provisions must prevail. *Id*.

The Court explained that "actions for medical malpractice against certain health care providers . . . are governed by special laws . . . which delineate the liberative prescription applicable to actions for medical malpractice under Title 40." *Id*. The Court determined that if the general codal articles at issue in that case were applied to medical malpractice actions, "the prescription and suspension provisions provided in the [LMMA] will be written out." *Id*. at 1230.

The Court stated that if it allowed the general codal articles at issue in that case to govern the prescriptive period applicable to malpractice actions, it would "condone and encourage the technique of unnecessarily prolonging malpractice litigation by a lesser standard." *Id*. Such a technique would permit "[t]he party

-15-

who improperly files a premature medical malpractice suit without first filing the claim with the board for a medical review panel, and whose suit is subsequently dismissed without prejudice, [to gain] an additional year of prescription in addition to the suspended time provided by the [LMMA], within which to file the suit anew." *Id*.

Similar to the plaintiff in *Lebreton*, Parrish asserts that, pursuant to a general codal article, i.e., article 2324, his premature lawsuit against AIS's alleged joint tortfeasors interrupted the prescriptive period applicable to Parrish's malpractice claim against AIS.[45] However, Parrish argues that this case is distinguishable from *Lebreton* because article 2324 and the LMMA can be harmonized and applied together.[46] According to Parrish, in light of the fact that the LMMA provides that requesting a medical review panel suspends prescription against qualified health care providers and solidary nonqualified health care providers, it would be consistent to hold that, pursuant to article 2324, a lawsuit filed in a court of competent jurisdiction against nonqualified health care providers interrupts prescription against all jointly/solidarily liable qualified health care

---

[45]Rec. Doc. No. 47-3, pp. 12.

[46]*Id*. at pp. 12, 15.

providers.[47]

Parrish's argument notwithstanding, article 2324 cannot be harmonized with the LMMA, as its application in a malpractice action would have the same practical effect as the general codal articles discussed in *Lebreton*. Application of article 2324 would enable plaintiffs to contravene the LMMA's specific statutory mandates by filing a premature lawsuit against a health care provider's alleged joint tortfeasors. Plaintiffs would be rewarded with an extra year of prescription, in addition to the suspended time provided by the LMMA, within which to file a new malpractice lawsuit. The court in *Lebreton* found that such a result was untenable. The filing of a timely lawsuit against a health care provider's alleged joint tortfeasors, who are not health care providers, does not interrupt prescription as to the health care provider.[48]

Considering the fact that the alleged act of negligence at issue in this case occurred no later than April 29, 2006, and that Parrish did not request a medical review panel until July 31, 2007,

---

[47]*Id*. (citing *Coleman*, 764 So. 2d at 84; La. Rev. Stat. Ann. § 40:1299.47(A)(2)(a)).
  La. Rev. Stat. Ann. § 40:1299.47(A)(2)(a) provides, in pertinent part:
  The filing of a request for review of a claim shall suspend the running of prescription against all joint and solidary obligors, and all joint tortfeasors, including but not limited to health care providers, both qualified and not qualified, to the same extent that prescription is suspended against the party or parties that are the subject of the request for review.

[48]The Court need not reach the issue of whether a solidary relationship exists among the parties as, regardless of how the relationship is defined, Parrish's medical malpractice claim has prescribed.

Parrish's medical malpractice claim against AIS is prescribed on its face. For the foregoing reasons, Parrish has failed to prove that the prescriptive period applicable to said claim has been either interrupted or suspended.

Accordingly,

**IT IS ORDERED** that AIS's motion for summary judgment is **GRANTED** and that AIS's complaint for declaratory judgment is **DISMISSED WITH PREJUDICE**.

**IT IS FURTHER ORDERED** that Parrish's cross-motion for summary judgment is **DENIED**.

New Orleans, Louisiana, May 1st, 2008.

LANCE M. AFRICK
UNITED STATES DISTRICT JUDGE